NOTICE
Decision filed 09/18/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 170354

NO. 5-17-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* APPLICATION FOR A TAX DEED | ) | Appeal from the |
| | ) | Circuit Court of |
| (Opal Castleman and Stephen R. Castleman, | ) | Washington County. |
| Petitioners-Appellees, v. Jerry Jean; Stewart | ) | |
| Producers, Inc.; Washington County Clerk; | ) | No. 14-TX-11 |
| Evelyn M. Fair; Unknown Owners or Parties | ) | |
| Interested; and Nonrecord Claimants, Respondents | ) | |
| (Jerry Jean, Respondent-Appellant; SI Resources, | ) | Honorable |
| LLC, Appellant; William Groome, Intervenor- | ) | Daniel J. Emge, |
| Appellee)). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Goldenhersh and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The section 2-1401 petitioner, Jerry Jean, appeals the May 23, 2017, order of the circuit court of Washington County, which granted intervenor William Groome's motion to dismiss Jean's petition to declare void or to vacate, pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)), the circuit court's previous order directing the issuance of a tax deed to the petitioners, Opal Castleman and/or Stephen R. Castleman (the Castlemans). In addition, the section 2-1401 petitioner, SI Resources, LLC, appeals the circuit court's August 14, 2017, order, which granted Groome's motion to dismiss SI Resources's petition to declare void or to vacate, pursuant to section 2-1401 of the Code (*id.*), the same order,

1

directing the issuance of a tax deed to the Castlemans.[1] For the following reasons, we affirm both orders of the circuit court.

¶ 2                                    I. FACTS

¶ 3     On September 19, 2014, Opal Castleman filed a *pro se* petition for tax deed in the circuit court of Washington County, naming the following respondents: Jerry Jean, Stewart Producers, Inc., Washington County Clerk, Evelyn M. Fair, unknown owners or parties interested, and nonrecord claimants. The petition alleged that the Castlemans had purchased the delinquent real estate taxes with respect to all oil, gas, and other mineral rights related to parcel No. 07-72-23-000-052-00, located in Washington County. According to the petition and the attachments thereto, the redemption period for these mineral rights was to expire on February 25, 2015. The circuit court issued an order directing the issuance of the tax deed on March 4, 2015.

¶ 4     On April 2, 2015, SI Resources filed a petition, pursuant to section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2014)), to vacate the March 4, 2015, order directing the issuance of a tax deed. According to the petition and exhibits attached thereto, SI Resources purchased the mineral rights to the subject real estate from Jean via quitclaim deed on March 27, 2015. The petition alleged that the order directing the issuance of a tax deed must be vacated because the Castlemans failed to strictly comply with the mandatory notice, service, and diligence requirements set forth in sections 22-5 through 22-40 of the Property Tax Code. 35 ILCS 200/22-5 to 22-40 (West 2014).

¶ 5     On July 1, 2015, Groome filed a motion to intervene in the litigation, alleging that he obtained a quitclaim deed to the mineral rights in the subject property from the Castlemans. The circuit court granted the motion to intervene that same date. On September 10, 2015, Groome

---

[1]The August 14, 2017, order granted Groome's motion to reconsider that portion of the circuit court's May 23, 2017, order denying his motion to dismiss SI Resources's petition and also denied Jean's motion to reconsider that portion of the circuit court's May 23, 2017, order dismissing his petition.

2

filed a motion, pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), to dismiss SI Resources's section 2-1203 petition to vacate the order directing the issuance of a tax deed. On November 16, 2015, the circuit court entered an order granting the motion to dismiss. SI Resources filed a notice of appeal to this court on November 24, 2015.

¶ 6 Meanwhile, on November 4, 2015, Jean filed an entry of appearance in the postjudgment proceedings. On November 13, 2015, Jean filed a petition to void, or in the alternative, to vacate, pursuant to section 2-1401 of the Code (*id.* § 2-1401), the circuit court's March 4, 2015, order directing the issuance of the tax deed to the Castlemans. In count I of his petition, brought pursuant to section 2-1401(f), Jean alleged that the order and tax deed are void due to the Castlemans' "complete failure to diligently ascertain, direct, or serve any notice of the tax sale to the record owners, Evelyn Fair, her Estate, or her successors and assigns." According to count I, due to these omissions by the Castlemans, Jean's due process rights were violated and the circuit court was without jurisdiction to issue the tax deed, rendering the tax deed void. In count II, brought pursuant to section 2-1401 generally, Jean alleged that the tax deed had been procured by fraud, and due to this fraud, Jean argued that section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2014)) provides that the order issuing the tax deed can be vacated.

¶ 7 On November 16, 2015, Groome filed a motion to strike Jean's section 2-1401 petition on the basis that Jean did not request leave to file the motion and that counsel for SI Resources, who also represented Jean, had previously admitted that "Jean clearly does not have standing to vacate the order for tax deed [for mineral rights on] property he no longer has any interest in whatsoever." The motion to strike further argued that Jean should seek leave to file his petition to vacate and Groome should have the opportunity to object. On November 30, 2015, Jean filed a motion to stay proceedings on his section 2-1401 petition pending this court's disposition of SI

3

Resources's appeal of the circuit court's order dismissing its section 2-1203 petition. On December 8, 2015, Groome filed an undesignated motion to dismiss Jean's petition to void and/or vacate the order issuing the tax deed on the basis that Jean has no interest in the mineral rights that are the subject of the tax deed, having given a quitclaim deed to those mineral rights to SI Resources on or about March 27, 2015.

¶ 8    On February 17, 2016, the circuit court entered an order granting Jean's motion to stay the proceedings on his motion to void and/or vacate the issuance of the tax deed pending this court's disposition of SI Resources's appeal of the circuit court's order dismissing its section 2-1203 motion to vacate. On November 22, 2016, this court issued an opinion dismissing SI Resources's appeal for a lack of jurisdiction, holding that SI Resources did not have standing to file a section 2-1203 petition because it was not a party to the original action, and thus its section 2-1203 petition did not toll the time limit for the appeal. *In re Application for a Tax Deed*, 2016 IL App (5th) 150517, ¶ 8.

¶ 9    On February 24, 2017, SI Resources filed a petition to void and/or vacate, pursuant to section 2-1401 (735 ILCS 5/2-1401 (West 2016)), the circuit court's order directing the issuance of the tax deed, making the same claims as are stated in Jean's petition. On March 13, 2017, Groome filed an undesignated motion to dismiss SI Resources's section 2-1401 petition, arguing that SI Resources was not a party to the tax deed proceedings, had no right to redeem the property during the applicable redemption period, and is not a proper party to a section 2-1401 proceeding. After full briefing on Groome's motion to dismiss the section 2-1401 petitions of both Jean and SI Resources, the circuit court held a hearing on May 8, 2017, and took the matter under advisement.

4

¶ 10     On May 23, 2017, the circuit court entered an order, granting Groome's motion to dismiss Jean's petition to declare void or vacate the order issuing the tax deed but denying the motion to dismiss the petition filed by SI Resources. On June 12, 2017, Groome filed a motion to reconsider that portion of the order that denied his motion to dismiss the petition filed by SI Resources. On June 19, 2017, Jean filed a motion to reconsider that portion of the order that granted Groome's motion to dismiss his petition. After full briefing on both motions to reconsider, the circuit court held a hearing on the motions on July 31, 2017. On August 14, 2017, the circuit court entered an order, granting Groome's motion to reconsider, dismissing SI Resources's petition in its entirety, and denying Jean's motion to reconsider the circuit court's previous dismissal of his petition. On September 18, 2017, Jean and SI Resources filed a notice of appeal. Additional facts will be set forth as necessary throughout this opinion.

¶ 11                                II. ANALYSIS

¶ 12     As Jean and SI Resources point out, Groome's motion to dismiss failed to specify whether he sought to dismiss their petitions under section 2-615 or 2-619 of the Code. 735 ILCS 5/2-615, 2-619 (West 2016). "While failure to properly label a motion to dismiss is not a pleading practice that should be encouraged, reversal for such a deficiency is appropriate only when prejudice to the nonmovant results." *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1046 (1998) (citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994)). Here, the record below makes it clear that the parties and the court treated the motion to dismiss count I of the petitions as a motion brought pursuant to section 2-615 of the Code, as it attacked the sufficiency of count I and raised the question of whether it stated a basis for relief from the judgment. See *id.* (citing *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 505 (1990)). Similarly, the record is clear that the parties and the court treated the motion to dismiss count II

5

of the petitions as a motion brought pursuant to section 2-619 of the Code, as it was based on affirmative matter that Groome contended defeated their claims. See *id.* at 1047 (citing *Illinois Graphics Co.*, 159 Ill. 2d at 485). For this reason, we find that Jean and SI Resources suffered no prejudice by reason of Groome's failure to properly designate the section of the Code under which the dismissal of their petitions was sought. Consequently, we will address the merits of the circuit court's dismissal of the petitions.

¶ 13    "In ruling on a motion to dismiss under either section 2-615 or section 2-619 of the Code, the court must accept all well-pled facts in the complaint as true and draw all reasonable inferences from those facts in favor of the [petitioners]." *Id.* (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 19 (1981)). In addition, "[b]ecause the resolution of either motion involves only a question of law, our review is *de novo*." *Id.* We can affirm the circuit court's decision on a motion to dismiss on any ground in the record, regardless of whether the circuit court relied on that ground or whether the circuit court's reasoning was correct. *Pryweller v. Cohen*, 282 Ill. App. 3d 899, 907 (1996).

¶ 14    SI Resources and Jean also note that the circuit court's dismissal of SI Resources's section 2-1401 petition was in response to Groome's motion to reconsider, which they argue was improper. As they set forth in their brief, "[t]he purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law, *or errors in the court's previous application of existing law*." (Emphasis added.) *Ragan v. Columbia Mutual Insurance Co.*, 291 Ill. App. 3d 1088, 1099 (1997). Our review of Groome's motion to reconsider, as well as the circuit court's order granting the motion and dismissing SI Resources's section 2-1401 petition, reveals that the basis for the motion to reconsider and the circuit court's granting of same was an error in the circuit court's previous

6

application of existing law. Accordingly, there was no error based on the circuit court's granting Groome's motion to reconsider.

¶ 15    With all of the previous standards in mind, we will address, in turn, the propriety of the circuit court's decision to dismiss the petitions filed by Jean and SI Resources. Before doing so, however, a review of the procedures required by the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2016)) prior to the issuance of a tax deed, as well as the procedures available for contesting same, is necessary to provide a context for our analysis.

¶ 16                    A. Required Procedures Prior to Issuance of Tax Deed

¶ 17    For the purposes of our analysis, it is important to distinguish those procedures required of the county collector prior to the sale of delinquent property to a tax buyer from those procedures required of a tax buyer prior to the issuance of a tax deed.[2] Our supreme court succinctly set forth these procedures in *In re Application of the County Collector*, 225 Ill. 2d 208, 212 (2007) (hereinafter *Lowe II*). The procedures required of the county collector prior to the sale of delinquent property were stated therein as follows:

> "Once property taxes become delinquent, the Property Tax Code *** provides that the county collector may file an application in the circuit court for judgment and order of sale of the delinquent property. The [Property Tax] Code directs that the county collector shall publish notice of its intent to file an application for judgment. [Citation.] The notice must be published in a newspaper in the township where the property is located at least 10 days before the application is filed. [Citation.] In addition, the county collector shall send a notice of the application for judgment and sale, by certified or registered mail, to the person in whose name the taxes were last assessed at least 15 days

_____
[2]It is important to bear in mind that neither the petition filed by Jean nor the petition filed by SI Resources makes any allegation of irregularities or violations of the Property Tax Code on the part of the county collector before the tax sale in this case.

7

before the date of the application for judgment and sale of the delinquent property. [Citation.] The county collector must present proof of the mailing to the court along with the application for judgment. [Citation.] The property owner can pay the delinquent taxes and costs anytime prior to the sale. [Citation.] If judgment is entered against the property, the county collector shall offer the property for sale pursuant to the judgment. [Citation.]"

*Id.*

¶ 18    The supreme court then explained the procedures required by the tax buyer in order to obtain the issuance of the tax deed as follows:

"Following a tax sale, the [Property Tax] Code provides that, in order to seek a tax deed, the tax purchaser must deliver a notice to the county clerk to be given to the party in whose name the taxes were last assessed. [Citation.] This notice must be delivered to the county clerk within five months after the tax sale, and the county clerk must mail the notice, within 10 days of receipt, by registered or certified mail. [Citation.] This section 22-5 'Take Notice' advises a party that his property has been sold for delinquent taxes, that redemption can be made until a specified date, and that a petition for tax deed will be filed by the tax purchaser if redemption is not made. [Citation.]

The [Property Tax] Code provides for a second 'Take Notice' to be sent to the owners, occupants and parties interested in the delinquent property not less than three months or more than five months prior to the expiration of the period of redemption. [Citation.] This section 22-10 take notice must give notice of the sale and the date of expiration of the period of redemption. [Citation.] The section 22-10 take notice must be served: personally by the sheriff; by registered or certified mail, return receipt requested; and by three publications in a newspaper. [Citations.]

8

Also 'within 5 months but not less than 3 months prior to the expiration of the redemption period,' the tax purchaser may file a petition in the circuit court seeking an order directing the county clerk to issue a tax deed to the property. [Citation.] In order to receive an order issuing a tax deed, the redemption period must expire without any redemption taking place, and the tax purchaser must prove to the circuit court that it has strictly complied with the statutory notice provisions set forth in sections 22-10 through 22-25 of the [Property Tax] Code [citations]." *Id.* at 212-13.

¶ 19                    B. Obtaining Relief After Issuance of Tax Deed

¶ 20    Section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2016)) provides that tax deeds are incontestable except by an appeal from the order of the court directing the county clerk to issue the tax deed. Otherwise, that section provides that relief from such orders is limited to the filing of a petition under section 2-1203 or 2-1401 of the Code, to be utilized "in the same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings." *Id.* However, when relief after issuance of a tax deed is sought pursuant to section 2-1401 of the Code, section 22-45 of the Property Tax Code limits the grounds under which postjudgment relief can be sought. *Id.* The only grounds for which relief from the issuance of a tax deed can be sought pursuant to a section 2-1401 petition are as follows:

"(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

9

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." *Id.*

¶ 21 It is worth reiterating that although section 22-45 of the Property Tax Code (*id.*) limits the grounds under which a section 2-1401 petition may be brought, that section provides that, otherwise, relief from an order issuing a tax deed may be had under section 2-1401 "in the same manner and to the same extent as may be had under [that] Section[ ] with respect to final orders and judgments in other proceedings." Accordingly, in determining issues set forth in this appeal regarding the propriety of the circuit court's dismissal of the section 2-1401 petitions of Jean and SI Resources, an examination of the general principles governing section 2-1401 petitions is appropriate. Having made a thorough review of the relevant procedures applicable to the issuance of and relief from the tax deed that is the subject of this appeal, we will address each count of the section 2-1401 petitions filed by Jean and SI Resources in turn.

¶ 22    C. Count I of Both Section 2-1401 Petitions—to Declare the Tax Deed Void

¶ 23 Count I of both section 2-1401 petitions seeks to have the tax deed declared void pursuant to section 2-1401(f) of the Code (735 ILCS 5/2-1401(f) (West 2016)),[3] based on the circuit court's lack of jurisdiction to issue the tax deed because there was a lack of notice to Jean.

---

[3]Section 2-1401(f) of the Code (735 ILCS 5/2-1401(f) (West 2016)) provides, "[n]othing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." Our supreme court has held that subsection (f) does not exclude, but merely differentiates, postjudgment petitions brought on voidness grounds from general postjudgment petitions. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). Under subsection (f), the general rules pertaining to section 2-1401 petitions—that they must be filed within two years of the order or judgment, that the petitioner must allege a meritorious defense to the original action, and that the petitioner must show that the petition was brought with due diligence—do not apply. *Id.*

In addition, count I seeks to void the tax deed on the basis of a violation of Jean's due process rights under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) due to the Castlemans' failure to make diligent inquiry into Jean's address and failure to provide him with notice of the tax deed proceedings. Mindful of these allegations, we turn to the propriety of the circuit court's order dismissing count I of both petitions.

¶ 24                                    1. *Vulcan Materials*

¶ 25    In determining, on the face of the pleadings, that count I of the petitions failed as a matter of law because the circuit court had jurisdiction to issue the tax deed, the circuit court relied on our supreme court's opinion in *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159 (1983). In that case, the supreme court stated the following with regard to the jurisdiction of a circuit court to issue a tax deed:

> "An order is rendered void not by error or impropriety but by lack of jurisdiction by the issuing court. [Citation.] This court has repeatedly held that a tax-sale proceeding is *in rem* and the court acquires jurisdiction over the land when the county collector makes his application for judgment and order of sale. [Citations.] Once acquired, the court retains its jurisdiction to make all necessary findings and enter all necessary orders supplemental to the original tax sale. [Citation.]
>
> It is well established that once a court acquires jurisdiction, subsequent fraud, concealment, or perjury will not render its order void. [Citations.]" *Id.* at 165.[4]

¶ 26    Applying the principles set forth in *Vulcan Materials* to the facts of the instant case, the circuit court obtained *in rem* jurisdiction over the property at issue after the county collector

---

[4]For example, the circuit court lacks jurisdiction over a property if the taxes have been paid or the property is tax-exempt. *S.I. Securities v. Powless*, 403 Ill. App. 3d 426, 443 (2010). These jurisdictional grounds for attacking a tax deed are reflected in subsections (1) and (2) of section 22-45 of the Property Tax Code. 35 ILCS 200/22-45(1), (2) (West 2016).

made the application for judgment and order of sale. As such, any alleged impropriety on the part of the Castlemans after the tax sale would render the issuance of the tax deed voidable rather than void. See *id.*; see also *S.I. Securities v. Powless*, 403 Ill. App. 3d 426, 443 (2010). Jean and SI Resources argue, however, that Illinois courts have strayed from the jurisdictional standard for declaring a tax deed void articulated in *Vulcan Materials* and its progeny under facts that they contend are similar to those in the case at bar. In order to address their argument, we must examine the cases upon which they rely in support of this proposition.

¶ 27                    2. *In re Application of the County Collector*

¶ 28    We begin with *In re Application of the County Collector*, 397 Ill. App. 3d 535 (2009) (hereinafter *Devon Bank*). In that case, Devon Bank filed a section 2-1401 petition to set aside a tax deed issued to Checkmate Acquisitions (Checkmate), contending that it had never received any notice of sale, as required by the Property Tax Code. *Id.* at 536-37. A subsequent purchaser of the tax buyer opposed the petition, arguing that because he was a *bona fide* subsequent purchaser of the property for value, and lack of jurisdiction did not affirmatively appear on the face of the tax deed proceeding record, under section 2-1401(e) of the Code (735 ILCS 5/2-1401(e) (West 2006)),[5] he had a superior right to the property. *Devon Bank*, 397 Ill. App. 3d at 537. The circuit court agreed with the subsequent purchaser and dismissed the petition. *Id.*

---

[5]Section 2-1401(e) of the Code provides that,
   "[u]nless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of [section 2-1401] does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." 735 ILCS 5/2-1401(e) (West 2016).
Here, Groome has not alleged in his motion to dismiss that he qualifies as a subsequent purchaser of the type set forth in section 2-1401(e).

12

¶ 29    On appeal, Devon Bank argued that the tax deed was void because Checkmate violated its due process rights by failing to conduct a diligent inquiry to determine who owned the property and failed to serve any notice of the sale on Devon Bank, the owner of record. *Id.* Devon Bank further argued that this violation of its constitutional due process rights precluded the circuit court from acquiring jurisdiction to order the issuance of the tax deed and rendered the issuance of the tax deed void. *Id.* In addition, Devon Bank argued that Miller could not be a *bona fide* purchaser for value because he was also charged with knowledge of the public records. *Id.*

¶ 30    The *Devon Bank* court began its analysis by explaining that prior to the 1990s, subsections (1) through (3) of section 22-45 were the only means to procure relief from tax deeds, and subsection (3), fraud, was most commonly alleged as a means for procuring relief. *Id.* at 544 (citing *In re Application of the County Collector*, 217 Ill. 2d 1, 20-21 (2005) (hereinafter *Lowe I*), *rev'd on other grounds*, 225 Ill. 2d 208 (2007)). The *Devon Bank* court further explained that in 1993, the General Assembly enacted subsection (4) as an additional means for collateral relief from a tax deed to address situations where there was a lack of any notice. *Id.* (citing *Lowe I*, 217 Ill. 2d at 21-22). The *Devon Bank* court concluded that this enactment, along with section 2-1401(f) of the Code (735 ILCS 5/2-1401(f) (West 2006)), effectively codifies the procedure for collaterally attacking a tax deed on the basis that it is void due to lack of any notice. *Devon Bank*, 397 Ill. App. 3d at 544. The *Devon Bank* court concluded that because the record showed that Devon Bank was the record owner of the property, but received *no notice, by publication or otherwise, of the tax sale, redemption period, or tax deed proceedings*, the tax deed at issue in that case would fit squarely within subsection (4) if the tax deed purchaser was found to have not made a " 'diligent inquiry and effort to [ascertain the identity of and to] serve

13

that person or party' with the requisite notices." *Id.* at 544-45 (quoting 35 ILCS 200/22-45(4) (West 2006)). The *Devon Bank* court went on to find that the tax buyer in that case did not make such diligent inquiry, and found that Devon Bank, as record owner of the property, was entitled to tax deed relief under section 22-45(4). *Id.* at 546. The court held that such failure to give Devon Bank any notice violated its right to due process of law and resulted in the circuit court never having acquired personal jurisdiction over Devon Bank, thus rendering the tax deed void. *Id.* at 548.

¶ 31 At most, *Devon Bank* represents a statement of the applicability of section 22-45(4) of the Property Tax Code as a means of rendering a tax deed void. Based on the holding in *Devon Bank*, in situations where there is no notice to the owner of record, there is section 2-1401(f) relief available to the property owner pursuant to section 22-45(4) of the Property Tax Code. *Id.* at 546. In addition, *Devon Bank* recognizes that in these situations, the record owner is deprived of due process of law. However, because Devon Bank received no notice of the tax proceeding, including prior to the county collector's application for judgment and sale, it does not operate to overrule the *Vulcan Materials* rule that tax deed judgments are void only in such cases where there is no *in rem* jurisdiction. *Id.*; see also *Vulcan Materials*, 96 Ill. 2d at 165. We find that *Devon Bank* is in no way inconsistent with the general principles of jurisdiction for tax deed proceedings set forth in *Vulcan Materials*, and must be limited to its facts.[6]

---

[6]Similarly, this court's decision in *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524 —which cited *Devon Bank* for the proposition that a tax deed is void where tax deed proceedings result in *a total failure to provide notice*, violates due process, and means the circuit court never acquired personal jurisdiction over the property owner—is not inconsistent with *Vulcan Materials* because that decision is likewise distinguishable on its facts. To the extent that *Excalibur Energy* references personal jurisdiction over the property owner in a situation where there is a total failure of notice, this failure began with the county collector not giving the notices required to apply for judgment and order of sale in the first place, and thus, would occur prior to the circuit court having *in rem* jurisdiction over the property. In any event, both *Devon Bank* and *Excalibur Energy* are appellate court cases and cannot overrule a decision of our supreme court. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)

14

¶ 32    Taking the factual allegations in count I of both section 2-1401 petitions in this case as true, there is no allegation that Jean received no notice, by publication or otherwise, of the tax deed proceedings. In fact, the record establishes that Jean was included in the publication notice put forward by the Castlemans. For this reason alone, whether we consider it a grounds for voiding the tax deed or rendering it voidable, section 22-45(4) of the Property Tax Code does not apply to the tax deed in the case at bar.[7] Moreover, *Devon Bank* does not constitute authority for the proposition that the tax deed in this case should be deemed void for a violation of due process or lack of personal jurisdiction because neither SI Resources nor Jean asserts that Jean failed to receive notice of the tax sale, redemption period, or tax deed proceedings.[8] Accordingly, we find no authority in *Devon Bank* to disturb the circuit court's decision to grant Groome's motion to dismiss count I of both section 2-1401 petitions.

¶ 33                    3. *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*

¶ 34    We turn now to SI Resources and Jean's reliance on our supreme court's decision in *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, for its argument that it was error for the circuit court to dismiss count I of both section 2-1401 petitions. In *DG Enterprises*, the supreme court characterized the issues on appeal as

---

(*stare decisis* requires courts to follow the decisions of higher courts).

[7]Again, subsection (4) of section 22-45 of the Property Tax Code (35 ILCS 200/22-45(4) (West 2016)) provides for setting aside a tax deed only in situations where there is "proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." Here, Jean and SI Resources are merely alleging the lack of diligent inquiry and effort prong of this subsection in count I of their petitions.

[8]For reasons discussed further below, to the extent that *Devon Bank* could be read as making a statement that a due process issue always renders a tax deed void, we disagree, and in situations where the lack of notice is alleged on the part of the tax deed purchaser and not on the county collector, we find a distinction, consistent with *Vulcan Materials*, in this regard.

15

"(1) whether an order issuing a tax deed is void and subject to collateral attack because of the failure to include the address and phone number of the county clerk in the publication and certified mail take notices that were required to be sent to the delinquent owner prior to the issuance of the tax deed and (2) whether due process standards were violated where certified mail notices to the owner were return[ed] unclaimed." *Id.* ¶ 1.

Unlike *Devon Bank*, the record owner of the property was named in the publication notices, and so the court in *DG Enterprises* ruled out subsection 22-45(4) of the Property Tax Code (35 ILCS 200/22-45(4) (West 2010)) as a means of providing relief from the issuance of the tax deed. *DG Enterprises*, 2015 IL 118975, ¶ 29.

¶ 35 The court in *DG Enterprises* went on to conduct an analysis of whether the delinquent property owner's due process protections were violated by the lack of actual notice to her of the tax deed proceedings. See *id.* ¶¶ 33-50. SI Resources and Jean argue that in doing so, the *DG Enterprises* court, like the *Devon Bank* court, was considering whether the tax deed was void. According to SI Resources and Jean, because they allege in count I of their petitions that the tax deed is void for the Castlemans' depriving Jean of due process, the circuit court erred in granting the motions to dismiss. We disagree with this reading of *DG Enterprises*. Nowhere in the supreme court's due process analysis does the court state that if it had found due process lacking, the tax deed would be void, rather than voidable. Indeed, the court states at the beginning of its analysis, that it is considering if "the tax deed should be set aside" due to the delinquent owner's due process rights being violated. *Id.* ¶ 34. In making its analysis and concluding that the property owner's due process rights were not violated, the court referred to the United States Supreme Court's decision in *Jones v. Flowers*, 547 U.S. 220 (2006), as well as its own analysis in *Lowe II*, 225 Ill. 2d 208. *DG Enterprises*, 2015 IL 118975, ¶ 34. It is these cases that lead us to

16

conclude that, even if taken as true, the allegations in count I of both section 2-1401 petitions, though characterized as a violation of Jean's due process protections, do not render the tax deed at issue void, but merely voidable.

¶ 36                                4. *Jones and Lowe II*

¶ 37    In *Jones*, the due process issue was whether *the government* provided sufficient notice to a property owner of his tax delinquency and his right to redeem the property prior to a public sale. *Jones*, 547 U.S. at 223-24; see also *DG Enterprises*, 2015 IL 118975, ¶¶ 35-36. An issue such as this, dealing with irregularities in procedure prior to the county collector making an application for judgment and order for sale, would be one that, if true, would render the tax deed void under the rule of *Vulcan Materials*, because it arises prior to the circuit court acquiring *in rem* jurisdiction. In contrast, the due process issue alleged in *Lowe II*, like the due process issue alleged in the case at bar, dealt with the sufficiency of the take notices required to be issued by the tax buyer after the judicial sale, at a time when the circuit court already acquired *in rem* jurisdiction under the rule of *Vulcan Materials*. Consistent with this distinction, the section 2-1401 petition filed in *Lowe II* sought to have the tax deed set aside, rather than to have it declared void. *Lowe II*, 225 Ill. 2d at 217.

¶ 38    Here, SI Resources and Jean seek to declare the tax deed void based on an alleged due process issue dealing with the adequacy of notice occurring on the part of the Castlemans after the county had filed its application and received a judgment allowing the sale of the property, which conferred *in rem* jurisdiction on the circuit court. We find the rule of *Vulcan Materials* remains good law, and as explained above, the authority cited by SI Resources and Jean to suggest otherwise does not support their position. For these reasons, the allegations in count I, taken as true, would make the tax deed at issue voidable rather than void, and because count I of

17

both section 2-1401(f) petitions seek to have the tax deed declared void, they were properly dismissed.

¶ 39    In the vast majority of cases, a tax deed being void or voidable would be a distinction without a difference as long as the property owner could otherwise meet the requirements of a section 2-1401 petition and allege and prove one of the grounds for setting aside a tax deed as set forth in section 22-45 of the Property Tax Code. However, in the case at bar, where Jean no longer has any interest in the subject property, and SI Resources acquired an interest in the property after the judgment issuing the tax deed was entered, the circuit court found that neither petitioner has standing to pursue a section 2-1401 petition to set the tax deed aside. We turn, then, to the circuit court's dismissal of count II of the petitions, which seek to set aside the tax deed based on an allegation that the tax deed was procured by fraud.

¶ 40        D. Count II of Both Section 2-1401 Petitions—To Vacate Tax Deed

¶ 41    The circuit court dismissed count II of both section 2-1401 petitions, finding that neither Jean nor SI Resources has standing to bring such a petition to vacate the tax deed. " 'A complaint may be involuntarily dismissed for lack of standing pursuant to section 2-619(a)(9) of the Code.' " *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶ 12 (quoting *Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002)). In *Schacht*, this court set forth the following general principles of standing:

> "The doctrine of standing ensures that issues are raised only by those parties with a real interest in the outcome of the controversy. [Citation.] To have the requisite standing to maintain an action, a plaintiff must complain of some injury in fact to a legally cognizable interest. [Citation.] The alleged injury must be: (1) distinct and palpable, (2) fairly traceable to the defendants' actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. [Citation.] Furthermore, the

18

plaintiff is not required to 'allege facts establishing that he has standing to proceed'; '[r]ather, it is the defendant's burden to plead and prove lack of standing.' [Citation.] Dismissal is mandated where a plaintiff lacks standing, because such a deficiency negates the very cause of action." *Id.* ¶ 14.

¶ 42    While the foregoing general standing principles apply to the ability of a party to bring a cause of action, we are mindful that we are, in this case, addressing the ability of the petitioners to bring a section 2-1401 petition to collaterally attack a final judgment. As stated above, section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2016)) provides that relief from a final judgment issuing a tax deed may be had under section 2-1401 "in the same manner and to the same extent as may be had under [that] Section[ ] with respect to final orders and judgments in other proceedings." Based on the plain language of this statute, the standing of Jean and SI Resources to bring a section 2-1401 petition to attack the tax deed in the case at bar depends on whether they would have standing to bring a section 2-1401 petition generally. With these preliminary observations in mind, we address Jean and SI Resources's standing to bring their section 2-1401 petitions in turn.

¶ 43                              1. *Jean's Standing*

¶ 44    In support of his motion to dismiss, Groome attached a copy of a quitclaim deed in which Jean gave SI Resources his interest in the subject property on March 27, 2015. Accordingly, at the time he filed his section 2-1401 petition, Jean had no interest in the subject property.[9] Nevertheless, Jean, without citation to authority, argues that Groome did not set forth any proof or evidence that Jean does not have any interest in the outcome of this section 2-1401 proceeding. We disagree. Because Jean no longer had any interest in the property when he filed

_____

[9]Had Jean retained any interest in the property, he would have standing to file a section 2-1401 petition based on the principles set forth herein, even if he had transferred some part of his interest to SI Resources or any other third party.

19

his section 2-1401 petition, the principles of standing preclude him from bringing the petition. See *Countrywide Home Loans Servicing, LP v. Clark*, 2015 IL App (1st) 133149, ¶ 35 (citing *Glisson v. City of Marion*, 188 Ill. 2d 211, 219 (1999)); see also *In re Application of the Hamilton County Treasurer*, 96 Ill. App. 3d 158, 162 (1981) (hereinafter *Gholson*) (in order to bring a petition to set aside a tax deed, the petitioner must have some *bona fide* title or interest in the property). For this reason, the circuit court did not err in dismissing Jean's section 2-1401 petition.

¶ 45                                    2. *SI Resources's Standing*

¶ 46     The final issue we must address is whether the circuit court erred in dismissing count II of SI Resources's section 2-1401 petition. Count II of SI Resources's section 2-1401 petition seeks to have the tax deed set aside pursuant to section 22-45(3) of the Property Tax Code (35 ILCS 200/22-45(3) (West 2016)), which requires proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee. SI Resources's section 2-1401 petition avers that the tax deed was issued on March 4, 2015, and on March 27, 2015, Jean conveyed the subject property to SI Resources via quitclaim deed. The circuit court found that SI Resources lacked standing to pursue a section 2-1401 petition because it had no interest in the property during the period of redemption. This finding was based on our supreme court's decision in *Miller v. Cook*, 135 Ill. 190, 202-03 (1890) (citing Robert S. Blackwell, A Practical Treatise on the Power to Sell Land for the Non-Payment of Taxes Assessed Thereon § 238 (1855) (Blackwell on Tax Titles)), which held that

> "the right to bring suit for the purpose of setting aside a tax sale, and having the deed
> declared void, is not confined to the original owner of the land, but may be exercised by

20

his mortgagee, or by any person who can show such an interest in the estate as would have entitled him to redeem."

More recently, this rule was reaffirmed in *In re Application of the County Treasurer & ex officio County Collector*, 2013 IL App (3d) 120999, ¶¶ 18-19 (hereinafter *Lincoln Title*), wherein the court, citing *Miller*, held that a title company that had issued a title insurance policy on the subject property had standing to file a section 2-1401 petition because it had such an interest in the property that it could have redeemed the taxes on behalf of the owner. SI Resources argues that the statement of standing set forth in *Miller* and its progeny is not exclusive, and because it has a current interest in the property, it should have standing to file a section 2-1401 petition to set aside the tax deed, despite having no interest in the property at the time of the tax sale proceedings.

¶ 47    We note that *Miller* was decided long before section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2016)) was enacted. Again, the language in that section allows for relief from a tax deed under section 2-1401 "in the same manner and to the same extent" as may be had "with respect to final orders and judgments in other proceedings." Pursuant to this section's plain language, we find that the issue with respect to the standing of SI Resources is whether a successor in interest to property that has been disposed of pursuant to a judgment entered prior to the successor's acquisition of such interest is permitted to file a section 2-1401 petition to set aside that judgment, essentially seeking to "step into the shoes" of the predecessor who was a party to the proceedings leading to such judgment. For the following reasons, an examination of Illinois law with respect to section 2-1401 petitions leads us to answer that question in the negative.

21

¶ 48    The general rule in Illinois is that " '[a] nonparty to a judgment has no standing to seek relief from that judgment by filing a section 2-1401 petition.' " *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1102 (2008) (quoting *In re J.D.*, 317 Ill. App. 3d 445, 449-50 (2000)); see also Restatement (Second) of Judgments § 64 & cmt. d, at 149 (1982). Only a few narrow exceptions have been recognized. *Hurlbert*, 386 Ill. App. 3d at 1102 (citing Restatement (Second) of Judgments § 64 & cmt. d, at 149 (1982)). Under these narrow exceptions, a nonparty may seek relief pursuant to section 2-1401 of the Code if the person is (1) privy to the record, (2) injured by the judgment and will derive benefit from its reversal, or (3) competent to release error. *Id.* Here, SI Resources will undoubtedly derive benefit from the reversal of the judgment. However, we find that in order to fall within this narrow exception to the general rule that a nonparty has no standing to file a section 2-1401 petition, the nonparty must be injured by the judgment at the time of its entry. Our review of the case law interpreting these sections supports this finding.

¶ 49    In *Hurlbert*, an insurance company that would be the sole source of satisfaction of the judgment was found to have standing because, at the time of the judgment, the parties sought to hold the insurance company liable for the judgment, meeting the injury exception. 386 Ill. App. 3d at 1103. Similarly, in *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434, ¶ 35, an insurance company was found to meet the injury exception to the general rule because it was the only entity from which the judgment could be satisfied. In *Browning, Ektelon Division v. Williams*, 256 Ill. App. 3d 299, 301-02 (1993), the exception was invoked to permit a nonparty corporation to proceed with a section 2-1401 petition where the underlying judgment was entered against its wholly owned subsidiary and the plaintiff in the underlying proceeding cited the nonparty corporation's assets in its attempts to collect on the judgment.

22

¶ 50　Conversely, where a nonparty has become affected by a judgment after the judgment is entered, even involuntarily, our courts have held that there is no standing to file a section 2-1401 petition. In *Frandsen v. Anderson*, 108 Ill. App. 2d 194, 199 (1969), a party to a judgment filed suit against an attorney for malpractice arising from that attorney's representation of the party in the proceeding leading to the judgment. The attorney filed a section 72 petition under our former Civil Practice Act (now section 2-1401), seeking to vacate the judgment. *Id.* Finding that the attorney was not a party or privy to the record nor injured directly by the judgment, the court held the petition was properly dismissed due to lack of standing. *Id.* at 201-02.

¶ 51　In the case at bar, SI Resources was a complete stranger to the judgment at the time it was entered. It was not in privity with any party, was not injured by the judgment, and would derive no benefit from its reversal. It was not until SI Resources purchased a quitclaim deed conveying to him "all of [Jean's] interest that he may own or be entitled to" that SI Resources had a basis to claim an interest in having the judgment issuing the tax deed to the Castlemans set aside. To hold that SI Resources has standing to proceed would be to hold that a nonparty can essentially purchase the standing to petition to set aside a judgment pursuant to section 2-1401. Such a holding would constitute a vast expansion of the narrow exceptions to the rule that only parties can file a section 2-1401 petition to set aside a judgment. And because section 22-45 of the Property Tax Code clearly limits the manner and extent of attacking a judgment issuing a tax deed to that of any other type of proceeding, in order to reverse the circuit court's dismissal of SI Resources's section 2-1401 petition, we would have to disregard this clear language set forth in section 22-45. We cannot do so.

¶ 52　To the extent that this court's decision in *Gholson*, 96 Ill. App. 3d 158, is contrary to our holding in this case, we note that it predates the enactment of section 22-45 of the Property Tax

23

Code. In *Gholson*, the party petitioning to set aside the tax deed purchased an interest in the property subject to the tax deed proceedings almost a year after the tax deed was issued. *Id.* at 162. Although the *Gholson* court recognized potential problems with a subsequent purchaser establishing the diligence and "freedom from negligence" elements required to set aside the tax deed, the court nevertheless reversed the dismissal of a petition to set aside a tax deed on the basis of "the uncertainty of prior precedent." *Id.* at 162-63. With the enactment of section 22-45, and our foregoing analysis of the standing of a nonparty to file a section 2-1401 petition, we find that *Gholson* is abrogated and/or overruled.

¶ 53    Similarly, this court's decision in *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, does not contradict our holding in this case. In *Excalibur Energy*, the plaintiff filed a complaint for ejectment, alleging it was entitled to possession of certain property because a tax deed issued to the plaintiff's predecessor in title was void for lack of notice. *Id.* ¶ 1. The circuit court granted a summary judgment in favor of the plaintiff, finding that the plaintiff and its predecessors had paid the real estate taxes on the subject property and that the plaintiff's predecessor did not receive notice of the tax deed proceedings. This court reversed with directions that the circuit court dismiss the plaintiff's ejectment complaint, finding that, pursuant to section 22-45 of the Property Tax Code, section 2-1401 was the sole method available to set aside a tax deed more than 30 days after the judgment. *Id.* ¶ 23. This court did not, as it has in this case, directly consider a nonparty's standing to pursue a section 2-1401 petition. Additionally, under the facts of *Excalibur Energy*, where there was a finding that the taxes on the property had actually been paid by the plaintiff and/or its predecessor in title, the plaintiff very well may have had standing to pursue a petition to set aside the tax deed under section 2-1401(f) because, as discussed above, a defect in the tax deed proceedings—occurring prior to the county

24

collector's application for judgment and order of sale—affects the circuit court's acquisition of *in rem* jurisdiction over the property, rendering the tax deed void. See *S.I. Securities*, 403 Ill. App. 3d at 443.

¶ 54 Although we found it necessary, based on the plain language of section 22-45 of the Property Tax Code, to analyze SI Resources's standing based on the rules applicable to the standing of a nonparty to file a section 2-1401 petition, we note that the results of that analysis are, in fact, consistent with the rule set forth in *Miller*. This is because a nonparty to the tax deed proceeding that nevertheless has such an interest in the property that it would be entitled to redeem the property, such as the title company in *Lincoln Title* and the mortgagee in *Miller*, would also fit an exception to the general rule that a nonparty may not file a section 2-1401 petition because the nonparty would be injured by the judgment at the time it is entered. Conversely, a nonparty who is a stranger to the judgment at the time it was entered, such as SI Resources in this case, does not have standing under either analysis because it (1) would not have an interest in the property such that it would be entitled to redeem the property at the time of the proceedings and (2) would not fit into any of the exceptions for a nonparty to have standing to pursue a section 2-1401 petition. For these reasons, we find that the circuit court did not err in dismissing count II of the section 2-1401 petition filed by SI Resources.

¶ 55                                    III. CONCLUSION

¶ 56 For the foregoing reasons, we affirm the orders of the circuit court of Washington County that dismissed the section 2-1401 petitions brought by Jean and SI Resources.

¶ 57 Affirmed.

25

2018 IL App (5th) 170354

NO. 5-17-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION FOR A TAX DEED | ) | Appeal from the |
| | ) | Circuit Court of |
| (Opal Castleman and Stephen R. Castleman, | ) | Washington County. |
| Petitioners-Appellees, v. Jerry Jean; Stewart | ) | |
| Producers, Inc.; Washington County Clerk; | ) | No. 14-TX-11 |
| Evelyn M. Fair; Unknown Owners or Parties | ) | |
| Interested; and Nonrecord Claimants, Respondents | ) | |
| (Jerry Jean, Respondent-Appellant; SI Resources, | ) | Honorable |
| Appellant; William Groome, Intervenor- | ) | Daniel J. Emge, |
| Appellee)). | ) | Judge, presiding. |

---

**Opinion Filed:**      September 18, 2018

---

**Justices:**      Honorable James R. Moore, J.

Honorable Richard P. Goldenhersh, J., and
Honorable David K. Overstreet, J.,
Concur

---

**Attorneys for Appellants**      Mindy S. Salyer, Amanda L. Moressi, Salyer Law Offices, LLC, 33 North Dearborn Street, Suite 1505, Chicago, IL 60602

---

**Attorney for Appellees**      Paul T. Slocomb, Hoffman & Slocomb, 1115 Locust Street, 4th Floor, St. Louis, MO 63101